*MacNaughton v. Young Living Essential Oils, LC*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2022

Argued:  October 17, 2022
Decided:  May 2, 2023

No. 22-0344

LORI MACNAUGHTON, individually and on behalf of all
others similarly situated,

*Plaintiff-Appellant,*

*v.*

YOUNG LIVING ESSENTIAL OILS, LC,

*Defendant-Appellee.*[*]

Appeal from the United States District Court
for the Northern District of New York
No. 21-cv-00071, Brenda K. Sannes,
*Chief Judge.*

Before:     KEARSE, PARK, and PÉREZ, *Circuit Judges.*

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

This case, from the United States District Court for the Northern District of New York (Sannes, *C.J.*), presents an issue of first application of this Court's recent decision in *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46 (2d Cir. 2022). Because we find that, under our case law, the New York General Business Law claims should not have been dismissed at the pleadings stage, we vacate the dismissal of those claims and remand the case for further proceedings consistent with this opinion. We also vacate and remand as to the unjust enrichment claims, which we find to have met Federal Rule of Civil Procedure 9(b)'s pleading standard. We affirm, however, the district court's dismissal of the breach of warranty claims.

JOHN J. NELSON, Milberg Coleman Bryson Phillips Grossman PLLC, Beverly Hills, CA (Mason Barney, Siri & Glimstad LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant Lori MacNaughton.*

GEORGE W. HICKS, JR., Kirkland & Ellis, Washington, DC (Olivia A. Adendorff, Rachael Rezabek, Kirkland & Ellis LLP, Dallas, TX, Kasdin M. Mitchell, Darina Merriam, Kirkland & Ellis LLP, Washington, DC, *on the brief*), *for Defendant-Appellee Young Living Essential Oils, LC.*

MYRNA PÉREZ, *Circuit Judge*:

In July 2020, the National Advertising Division ("NAD"), a self-regulatory organization, concluded that Defendant Young Living Essential Oils, LC's ("Young Living") claims that its oils are "therapeutic-grade" and impart physical and/or mental health benefits are "unsupported," and recommended that Young Living stop making these claims. BBB National Programs, *NAD Recommends that*

2

*Young Living Essential Oils Discontinue 'Therapeutic Grade' and Health-Related Claims for Its Essential Oils; Advertiser to Appeal* (July 22, 2020), https://bbbprograms.org/media-center/dd/nad-young-living-essential-oils-claims; Joint App'x 16–17, 37–38.  By the time of NAD's announcement, however, Plaintiff Lori MacNaughton had already spent money on Young Living's products, including lavender oil advertised to "promote[] [a] feeling of calm and fight[] occasional nervous tension" and peppermint oil that allegedly "helps to maintain energy levels."  Joint App'x 24, 79–80.  Feeling misled by claims that the products would have effects like "promot[ing] feelings of relaxation & tranquility," *id*. at 24–25, 79, MacNaughton sued, on behalf of herself and other similarly situated individuals, asserting claims under common law and various state statutes that she believes protect consumers like her against companies like Young Living.  The district court dismissed MacNaughton's suit, finding that Young Living's claims that its products would do things like "help[] to maintain energy levels" was run-of-the-mill puffery that companies use when trying to persuade potential customers to part with their dollars.  *MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 328 (N.D.N.Y. 2021) (citation and

internal quotation marks omitted).[1]  The district court, however, did not have the benefit of this Court's recent decision in *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46 (2d Cir. 2022).  *Int'l Code Council* sets forth a critical distinction between subjective statements that are non-actionable puffery as a matter of law, and objective statements that are provable and not so facially implausible that no reasonable buyer could justifiably rely on them.  Because we find that the challenged advertising statements by Young Living fall into the latter category— which should not be the basis for dismissal at the pleadings stage—we vacate the district court's dismissal of the New York General Business Law claims.  We also vacate dismissal of the unjust enrichment claim, which we find satisfies the Rule 9(b) pleading standard.  We affirm the district court's dismissal of the breach of warranty claims.  We therefore vacate in part and affirm in part.

## I.  Background

Young Living sells a variety of "essential" oils and essential oil blends that it markets through its website, other e-commerce channels, and "independent

---

[1] The district court's case caption refers to MacNaughton by a different spelling.  We refer to the plaintiff as MacNaughton, as the name is spelled in her operative complaint, but refer to the lower court's order by the spelling used in that decision.

4

distributors" in the United States.[2]  The company labels the relevant products at issue in this case ("the Products") as being "100% Pure, Therapeutic-Grade" and claims that they confer physical, mental, or medicinal benefits.  Joint App'x 12–14, 80, 91.  MacNaughton alleges that she reviewed the labels marked "therapeutic-grade" and the benefits listed on Young Living's website before purchasing the Products.  *Id*. at 24.  On its website, Young Living instructs its salespeople that in "describing therapeutic-grade oils," they should mention that "every essential oil . . . has the highest naturally-occurring blend of constituents to maximize the desired effect."  *Id.* at 14 (emphasis omitted).  The website also contained a now-removed statement admitting that though the therapeutic-grade "promise" was "bold," the salesperson could "share [the] products with confidence, knowing that Young Living truly has the experience to produce essential oils that work."  *Id.* Similar guarantees remain on Young Living's "various blogs and other websites." *Id.* at 14–15.  Even after both NAD and a panel of the National Advertising Review Board ("NARB")[3] recommended that Young Living stop making some of its

---

[2] The facts are drawn from the First Amended Complaint and are accepted as true for the purpose of this opinion.  *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011).

[3] NARB is the appellate advertising body of NAD.

claims, Young Living continued to advertise the Products as being "therapeutic-grade." *Id.* at 16–18, 21 37–38; BBB National Programs, *supra*.

The operative First Amended Complaint alleges that MacNaughton and others like her, moved by deceptive labeling, marketing, and advertising, paid a premium for Young Living's Products, which provided no scientifically proven health-related benefits and failed to provide the promised "therapeutic" benefits. In support, she cites three studies, all of which conclude there is insufficient evidence to find that aromatherapy is an effective treatment of anxiety or of any other type of condition. *MacNaughten*, 575 F. Supp. 3d at 323–25.

Young Living moved to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 8(a)[4], 9(b)[5], and 12(b)(6)[6]. The district court

---

[4] Federal Rule of Civil Procedure 8(a) states that "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The district court did not base its dismissal on this ground, so this opinion does not discuss Appellees' arguments for dismissal on this basis.

[5] Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

[6] Federal Rule of Civil Procedure 12(b)(6) states that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

dismissed all of the claims, which asserted a violation of the "state Consumer Fraud Acts" or, in the alternative, violation of New York General Business Law § 349 or, in the alternative, New York General Business Law § 350; violation of New York General Business Law § 350-A(1); breach of express warranty; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; and, in the alternative, unjust enrichment. *MacNaughten*, 575 F. Supp. 3d at 320. The district court dismissed the claims raised under the New York General Business Law because "the language at issue is non-actionable puffery." *Id.* at 327–30. It dismissed the unjust enrichment claim for not meeting Federal Rule of Civil Procedure 9(b)'s pleading standard by failing to delineate the specific health or therapeutic benefits that were allegedly unsubstantiated, and as to which products. *Id.* at 330–32. And it dismissed the breach of warranty claims because of MacNaughton's failure to adequately allege that she provided notice of the breach and to plead privity of contract. *Id.* at 333–35. MacNaughton declined the district court's permission to amend and instead timely filed notice of appeal. Final judgment was entered after MacNaughton's deadline for seeking permission

7

to amend had passed.[7]

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of a dismissal under Rule 12(b)(6). *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013). Accordingly, we "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Id.* The complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A dismissal pursuant to Rule 9(b) is also reviewed *de novo*. *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016).

## III. DISCUSSION

The breach of warranty claims were properly dismissed because MacNaughton failed to allege proper notice and privity of contract. A full dismissal of the lawsuit at this stage of the case was improper, however, because MacNaughton alleged sufficient facts to both state a plausible claim to relief on the New York General Business Law claims and plead an unjust enrichment claim.

---

[7] Because the claims raised under New York law were dismissed, the district court determined that MacNaughton lacked Article III standing to pursue her other claims, arising under the laws of other states. *MacNaughten*, 575 F. Supp. 3d at 335.

## A. New York General Business Law Claims

Companies have some latitude when marketing their products, but there are limits. New York State has certain laws designed to protect consumers against deception and false advertising. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323 (2002) ("New York's Consumer Protection Act—General Business Law article 22-A—was enacted to provide consumers with a means of redress for injuries caused by unlawfully deceptive acts and practices . . . ."). Two such laws are New York General Business Law §§ 349 (Deceptive Acts and Practices Unlawful) and 350 (False Advertising Unlawful), which are analyzed together. *Goshen*, 98 N.Y.2d at 324 n.1. These two statutes require a claimant to show that the defendant "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (2012)). "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v.*

*Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).  One defense against allegations of materially misleading statements is that the underlying statements are "mere puffery," which cannot form the basis of such a claim.  *See Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 21 (2d Cir. 2000) (quoting *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)).  To understand what counts as puffery, we must explain the two types that this Court recently identified in *Int'l Code Council*: (1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them.  43 F.4th at 60.

The first category of puffery encompasses "subjective statements of opinion which cannot be proven false."  *Id*.  This form of puffery "often manifests as 'exaggeration[s] or overstatement[s]' that mention 'nothing specific,' but rather amount to 'general claim[s] of superiority' 'expressed in broad, vague, and commendatory language' that are 'considered to be offered and understood as an expression of the seller's opinion only.'"  *Id.* at 59–60 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159–60 (2d Cir. 2007)).  Under our case law, claims that a website designed to compile construction codes "provides a complete

understanding of relevant material" and that the author of a book on animals "thoroughly researched dozens and dozens of animals" have been deemed non-actionable puffery as a matter of law. *See Int'l Code Council*, 43 F.4th at 51, 63; *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). Because these are "subjective statements of opinion," they cannot be proven false and therefore "courts treat them as non-actionable puffery as a matter of law." *Int'l Code Council*, 43 F.4th at 60.

The second type of puffery involves "'exaggerated, blustering, and boasting statement[s]' that are *objective*—and therefore technically provable—but 'upon which no reasonable buyer would be justified in relying.'" *Id.* (quoting *DIRECTV, Inc.*, 497 F.3d at 160). This Court has found that statements such as those claiming that the previously-mentioned construction codes website, *supra*, is "[a]lways up to date" fall within this second category because they are provable as false. *Id.* at 61–62.

Even if a claim is provable as false, if it is "so patently hyperbolic that any allegations that it misled consumers are facially implausible," it is non-actionable puffery that "no reasonable buyer would be justified in relying on." *Id.* at 60–62 (citation and internal quotation marks omitted). The example provided in *Int'l*

*Code Council* is illustrative:  "If a bubblegum brand advertised that its gum permits chewers to 'blow a bubble as big as the moon,' the statement would be literally false, but it is facially implausible that any reasonable buyer could justifiably rely on that claim."  *Id.* at 60.  That statement would therefore be "ripe for dismissal on puffery grounds."  *Id*.  "Yet, if the company falsely advertised that you could 'blow a bubble bigger than your own head,' it is plausible that a reasonable buyer could be misled."  *Id.* at 60–61.  Once the statement is identified as both provable as false and plausible, a defendant can only prevail on the puffery defense after a fact-intensive inquiry on how a reasonable buyer would react.  That inquiry cannot be resolved at the pleadings stage.  *Id.* at 61 (explaining that such a "statement *might* qualify as puffery, but only if consumer evidence introduced at summary judgment or trial showed that 'no reasonable buyer would be justified in relying on it in navigating the marketplace'" (quoting *DIRECTV, Inc.*, 497 F.3d at 161)).

Young Living's statements about its "therapeutic-grade"[8] oils having health and medicinal benefits are both provable and not "so patently hyperbolic that any allegations that it misled consumers are facially implausible."  *Id.*

---

[8] That, in her complaint and on appeal, MacNaughton focuses on Young Living's use of the word "therapeutic" on the Product labels, s*ee* Joint App'x 24–30, is of no moment because it is too early to determine even if "therapeutic-grade" is non-actionable puffery.

12

First, there is the term "therapeutic-grade." The word "therapeutic" means "[o]f or pertaining to the healing of disease." *Therapeutic*, Oxford English Dictionary (2d ed. 1989). Moreover, the word "grade," in this context, means "[a] degree of comparative quality or value." *Grade*, Oxford English Dictionary (2d ed. 1989).

"Therapeutic-grade," then, is not a subjective or vague term, but rather one that represents the item possesses a degree of quality as to produce healing. This is different from the out-of-circuit, and therefore nonbinding, cases Young Living raises. In those cases, the qualifier "grade" was compounded with adjectives that are merely general representations of superiority; for example, "superior grade," *Tint Shop v. Bekaert Specialty Films, LLC*, Case No. 10 CV 0016 MMA (AJB), 2010 WL 11684787, at *5 (S.D. Cal. Sept. 28, 2010), or "prime grade," *Riviana Foods, Inc. v. Golden Star Trading, Inc.*, Case No. 4:19-CV-01994, 2020 WL 6153602, at *10 (S.D. Tex. Apr. 6, 2020).

Second, the phrase "therapeutic-grade" must be considered in context. *See Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) ("[C]ontext is crucial." (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013))); *see also DIRECTV, Inc.*, 497 F.3d at 157 ("[A] court 'must consider the advertisement in its

13

entirety and not . . . engage in disputatious dissection.'" (quoting *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986))). Along with the "therapeutic-grade" label, Young Living also promised that each Product would produce particular medicinal or physical effects, such as "promot[ing] a sense of clarity and focus." Joint App'x 12–15. Additionally, Young Living directed its salespeople to emphasize that every oil "has the highest naturally-occurring blend of constituents to maximize the desired effect" and that "Young Living truly has the experience to produce essential oils that work." *Id.* at 14 (emphasis omitted). The accuracy of all these statements and claims is provable. In fact, the truth of these claims has already been questioned by the NAD, the NARB, and the studies cited in MacNaughton's First Amended Complaint—which debunk claims that aromatherapy is an effective treatment of anxiety or of any other type of condition.[9] *Id.* at 21–23.

Not only are these claims all provable, but unlike an advertisement representing that a certain gum permits consumers to blow a bubble as big as the

---

[9] As to the NAD and NARB findings, we recognize Young Living's argument that these are not binding on courts. Nonetheless, consistent with our standard of review, we still find them relevant at the pleadings stage to the question of whether MacNaughton has raised a plausible claim regarding how a reasonable consumer would react to the defendant's statements. *See Mayor & City Council of Balt.*, 709 F.3d at 135 ("[W]e accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor.").

14

moon, *see Int'l Code Council*, 43 F.4th at 60–61, they are not so patently hyperbolic that it is implausible for a reasonable consumer to be misled. That the statements and claims are "plausible[,] [such] that a reasonable consumer would construe" them to mean what they say, confirms that they fall squarely within the second type of potential puffery. *Id.* at 61. Therefore, our holding in *Int'l Code Council* requires the statements here be subject to a "fact-intensive inquiry" on how a reasonable buyer would be affected. *Id.* at 60. This inquiry "typically should not be resolved on a motion to dismiss." *Id.* Dismissal of the New York General Business Law claims was therefore in error.

Young Living raises two other potential grounds on which it argues these New York General Business Law claims can be dismissed: (1) MacNaughton only pleaded that Young Living's claims are unsubstantiated, which does not rise to the level of being false or misleading, and (2) MacNaughton failed to adequately plead the other elements of her New York General Business Law claims. We find both arguments unpersuasive. Neither was addressed by the district court.

*First*, Young Living does not cite any binding case law to support its argument that the New York General Business Law does not protect against advertising that lacks substantiation. It cites only to out-of-circuit law that does

15

not apply here. *See, e.g., Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096–97 (9th Cir. 2017) (assessing California law). We are unpersuaded by this argument and see no reason to apply these cases to New York laws.

*Second*, we find that MacNaughton properly pleaded all other challenged elements of her New York General Business Law claims—specifically, causation, injury, and territoriality.[10] MacNaughton properly alleged causation because her First Amended Complaint claims that she saw the "therapeutic-grade" label and the statements made about the individual Products' promised effects before purchasing the Products. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (citing *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004)); Joint App'x 24. She also properly pleaded the injury requirement by alleging that "the price of the product was inflated as a result of defendant's deception." *Baron v. Pfizer*, 840 N.Y.S.2d 445, 448 (2d Dep't 2007); Joint App'x 11, 15–16, 23, 25; *see also Ackerman v. Coca–Cola Co.*, No. CV–09–0395

---

[10] To assert a claim under the applicable New York General Business Law sections, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander,* 802 F.3d at 300 (quoting *Koch,* 944 N.Y.S.2d at 452). Additionally, the New York Court of Appeals has interpreted the sections "to require that 'the transaction in which the consumer is deceived . . . occur in New York.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (quoting *Goshen*, 98 N.Y.2d at 324 & n.1).

16

(JG)(RML), 2010 WL 2925955, at \*23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").  Finally, we find that MacNaughton sufficiently pleaded territoriality, or what this Court has defined as "a sufficient nexus between [MacNaughton's] transactions with [Young Living] and New York to fall within the territorial reach" of the New York General Business Law.  *Cruz*, 720 F.3d at 122.  MacNaughton, a citizen of New York who resided in Syracuse, purchased the products online, thus satisfying the requirement that "the transaction in which the consumer is deceived must occur in New York." *Goshen*, 98 N.Y.S.2d at 324; Joint App'x 8, 23–24.

In sum, we find unpersuasive the two alternative grounds proposed by Young Living for dismissing the New York General Business Law claims. Additionally, any potential puffery in this case is of the type that is provable and not so facially implausible that no reasonable buyer would be justified in relying on it, thus requiring a fact-intensive inquiry to assess how a reasonable buyer would react to the relevant statements.  This inquiry is necessary to confirm whether the statements are actually mere puffery, for which the seller cannot be held liable.  The New York General Business Law claims should therefore proceed

17

to discovery. As such, we vacate the dismissal of MacNaughton's New York General Business Law claims.[11]

**B. Unjust Enrichment**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Here, MacNaughton must satisfy this heightened pleading standard because her unjust enrichment claim "sound[s] in fraud." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Specifically, she alleges that Young Living "misrepresent[ed] the Products as 'therapeutic' and having physical, health and/or medicinal benefits and omitt[ed] material facts." Joint App'x 45.

One of the primary objectives of Rule 9(b)'s particularity requirement is to ensure that defendants receive "fair notice of [a] plaintiff's claim, to enable preparation of [a] defense[.]" *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). "Bare-bones allegations" therefore do not suffice. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d. Cir. 2013). We have

---

[11] As noted above, *supra* n.7, because the district court dismissed MacNaughton's claims under New York law, it also dismissed her claims arising under the laws of other states for lack of Article III standing. On remand, with the understanding that the New York General Business Law claims are plausible, the district court shall proceed as necessary as to the claims arising under the laws of other states.

held that to satisfy Rule 9(b)'s requirement that "a party . . . state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Applying this standard, we conclude that MacNaughton's complaint passes muster under Rule 9(b). The First Amended Complaint clearly and repeatedly alleges that Young Living falsely labeled the Products "therapeutic-grade" and falsely promised that the Products confer health and medicinal benefits. Joint App'x 14–15, 24. As alleged, MacNaughton purchased the Products based on Young Living's claims but found that they did not provide the promised benefits. As noted above, in support of her claim that these were empty promises, MacNaughton cites to conclusions reached by the NAD, the NARB, and the three studies finding insufficient evidence for the conclusion that aromatherapy is an effective treatment for anxiety and other conditions. *See supra* Section III.A. And though MacNaughton alleges that all of Young Living's Products were marketed with false promises, she specifies that "[i]n the last four years, and specifically on

19

or around February 2020" she purchased six of the oils online. Joint App'x 24. The First Amended Complaint also lists the specific beneficial effects promised for three of the oils. *Id.* We therefore find that MacNaughton stated the circumstances constituting fraud with sufficient particularity to satisfy Rule 9(b), and certainly with enough particularity to give fair notice of her claim and enable preparation of a defense.

Our decision in *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27 (2d Cir. 2014) (summary order), relied on by both the district court and Young Living on appeal, in addition to not being precedential, is easily distinguishable from this case. In *DiMuro*, we concluded that the plaintiff's complaint was "wholly conclusory" and completely failed to specify "which of [the] alleged statements are fraudulent and with regard to what product" and why any of the defendant's claims were false. *Id.* at 30. None of those defects are present here, where MacNaughton has provided particularized allegations as to how the statements were fraudulent,

explained the "when" and "where," and identified the party responsible for the statements.

Accordingly, because MacNaughton's unjust enrichment claim satisfies the Rule 9(b) pleading standard we vacate dismissal of the unjust enrichment claims.

Young Living's alternative argument—that the unjust enrichment claim is duplicative of the General Business Law claims—may well be meritorious.  But, the district court should decide this question in the first instance, once the record has been more fully developed and after considering the viability of the General Business Law claims.

**C. Breach of Warranty**

Breach of warranty claims protect consumers who rely on either an explicit or implicit fact or promise that the seller knew the consumer had in mind and relied on when purchasing.  *See, e.g.*, *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (2d Dep't 1989); *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 790 (3d Dep't 1997).  We affirm dismissal because MacNaughton failed to plead two of the requirements for breach of warranty claims.

*First*, "[i]n order to asse[r]t a claim for breach of an express or implied warranty under New York law, 'a buyer must provide the seller with timely notice

of the alleged breach.'" *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 282 (S.D.N.Y. 2021) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (in turn, citing N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"))). The First Amended Complaint makes no mention of when, specifically during the four-year period during which MacNaughton allegedly used the Products, she discovered that they did not deliver the promised benefits and notified Young Living. *MacNaughten*, 575 F. Supp. 3d at 333–34. The district court therefore did not err in concluding that she failed to provide Young Living with the requisite pre-suit notice under N.Y. U.C.C. § 2-607(3)(a).

*Second*, under New York law, express and implied breach of warranty claims seeking to recover for financial injuries, like those here, require a showing of privity between the manufacturer and the plaintiff unless an exception applies. *See Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013). The First Amended Complaint failed to plausibly allege privity of contract. The district court correctly noted that MacNaughton "alleges only that she bought [Young Living]'s products 'online,' and not whether she bought them

22

on Young Living's website or through a third-party vendor[.]" *MacNaughten*, 575 F. Supp. 3d at 334. MacNaughton realleges here that she is exempt from this requirement because three exceptions apply: the exception for when a defendant directly markets to consumers, the exception for products sold in a sealed container and ultimately absorbed by consumers, and the third-party beneficiary exception. *Id.* at 335. We agree with the district court that application of the first two exceptions is inappropriate because those arguments are supported only by out-of-circuit case law and are contrary to case law from within this circuit. *Id.* (citing cases). The third-party beneficiary exception, under which privity is not required if the manufacturer delivers to and attempts to meet the remote customer's requirements through a dealer, is also inapplicable. This is because MacNaughton failed to allege the existence of a contract between a supplier and Young Living for her benefit. *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014) ("Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit, and (3) that the benefit to him is sufficiently immediate, rather than incidental, to

23

indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." (internal quotation marks and alteration omitted)).

Accordingly, we affirm the district court's dismissal of the breach of warranty claims.

## IV.  CONCLUSION

We have considered all of the parties' remaining arguments on appeal and have found them to be without merit.  For the reasons stated above, we **VACATE in part** and **AFFIRM in part** the district court's decision and order.  We **VACATE** the district court's ruling insofar as it dismissed the New York General Business Law claims for being based on statements of non-actionable puffery and the unjust enrichment claim for not satisfying the Rule 9(b) requirement.  We **AFFIRM** the ruling as to the dismissal of the breach of warranty claims.  We **REMAND** for further proceedings consistent with this opinion.